Haywood, J.
This was an appeal from the judge of the Chancery Court.
The bill charges that Barton Goodwin, of Roane County, departed this life in 1811, having, on the 17th of October, 1810, made his last will and *80 testament, leaving the defendant, Elizabeth, his second wife, and Jesse Goodwin, his son and only child, by a former wife, the said Elizabeth not having borne him any child; that in the will, one sorrel gelding and a feather-bed were given to Jesse Goodwin, and then “ all the personal estate whatsoever and wheresover, and of what nature, quality, and kind soever,” after paying his debts, legacies, and funeral expenses, he gives and bequeaths to said Elizabeth, “ to and for her own use and benefit and disposal absolutely; the remainder of said estate, after her decease, to be for the use of the said Jesse Goodwin.” The testator appointed the said Elizabeth his sole executrix. The personal estate consisted of negroes and other articles. And in 1813 she married Bell, who, by virtue of said marriage, obtained possession of said estate. Jesse Goodwin, on the first of March, 1815, sold and assigned to the complainant all his interest in the said estate, and the defendants insist that the estate belongs absolutely to them, and that they have a right to sell and dispose of the same as they choose, and have actually sold some of the negroes, and are offering and endeavoring to sell others. The bill prays an account, and that the defendants may be decreed to deliver over the estate, or give security that it shall not be wasted.
The answer and proof make out all these charges, and the defendants insist that the will gives the whole estate to Elizabeth, and that Jesse is not entitled to anything but what she may choose to leave him at her death, and that the complainant has no title.
This Court rejects all the depositions which were taken to fix the meaning of the will, and it is not denied but that the interest of Jesse Goodwin, if any he had under this will, was transferable, and was actually tranferred by deed to the complainant; and that an interest in remainder, such as Jesse claims under this will, is one which will be protected in a court of equity, when the property is in danger of being disposed of in defeasance of the complainant’s rights, and it sufficiently appears that such danger does exist in the present case. Still, the principal question remains, has Jesse an estate in remainder ?
For the elucidation of this subject it is first to be ascertained, by the rules of construction, what is the meaning of the clause in question ? and, secondly, whether the rules of law be adverse to the meaning ?
First, then, if there be two clauses in a will, the latter being in appearance repugnant to the former, they are to be so construed, if possible, as to be reconciled to each other. If the whole personal estate of a testator be given to A, and afterwards, in the same will to B, they shall take the whole personal estate together, and not one in exclusion of the other. If the whole be given to one, remainder to the other after death of the former, the latter clause cuts down the absolute estate in the first clause, so as to be consistent with itself, to a life estate in the legatee. According to this *81 rule of construction, if no explanatory words were subjoined to the first clause in the present case, the remainder over would have cut down the absolute estate given in the first clause to a life estate only. Such consequence, however, is supposed to be excluded in the present case by the additional words, “to her own use and benefit and disposal absolutely.” These words were intended as explanatory of his meaning, and they could not be intended as explanatory by way of enlargement of the absolute estate already given, for the powers annexed to it by law could not be enlarged by any explanation; they must therefore have been used by way of restriction upon the generality of the foregoing terms.
For her own use and benefit is to signify that it is not to be employed for the use and benefit of third persons. And it is to be at her own disposal within the limits of this restriction, not subject to the interference or control of any other person. If this be not the meaning of the additional words, they have no meaning or operation at all. When employed for her own use, and not for that of third persons, it was rationally expected by the testator that there would be a remainder for his son, whereas, if she could employ it to whatever use she pleased without restriction, there probably would not be any such remainder. The use, then, which she is to make of the property given to her, is not at her will and pleasure, but within certain prescribed bounds, and for the attainment of a specific object; that is to say, for her own use and benefit. Was it the intention of the testator that she might dispose of the whole by will P Then the disposition by her will would be different from the disposition by his, and although he directed that after her death the property should go to his son, yet, after her death, it would not go to the son but to her legatee. I think it may be safely pronounced that such was not his intention. And then it follows that she had no power to dispose of the whole estate at her will and pleasure, but only for the particular and specified purpose of her own maintenance and, so far as was necessary, for her own use and benefit. The rights conferred upon her were to determine, as soon as this object should be accomplished, and so soon as the estate should be no longer necessary to be employed for her own use and benefit. Upon her death the son was to succeed into her place, and the intent was that she should make no disposition but that which was compatible with a combined view of both his and her rights, namely, so far as was necessary for her maintenance, and so as not to trench beyond that upon his just expectations. Ask the question, was it intended that she might dispose of the whole by marriage ? and the fair answer would be in the negative, and for this plain reason, that a disposition of the whole by marriage is incompatible with the idea of a remainder for the son, and inconsistent with the idea that after her death the son should take. It is to be concluded, therefore, the widow was to have a life estate without power to dispose of the estate at her will and pleasure, *82 and with liberty to dispose of it so far only as was necessary for her own use and benefit; in other words, for her support and maintenance in like manner as the law prescribes to other tenants for life, if personally for support and maintenance. She may dispose absolutely of such things as are necessary to he disposed of for the attainment of this end. She may, from time to time, dispose of the cattle, hogs, and corn, and the like, and the produce of the labor and hire of the negroes, as it shall arise ; she has no power to dispose of or alienate what is called in our law the imperishable part of the estate, or, in other words, that which is not consumed in the use, and she must observe the limits which are dictated by the objects that were in the mind of the testator. If this be a correct view of his designs, then, it is to be ascertained in the next .place whether they be condemned by any rule of law.
Several classes of adjudged cases are supposed in argument to have this effect. Amongst the various modes of transferring property from one man and vesting it in another, is that of giving him a power to dispose of it to whomsoever he pleases, without any restriction. Such universal and unrestrained power is considered to vest the property in him to whom the power is given, ever since the case, 2 Atk. 172, which is founded, upon prior decisions, and followed by many later ones. This established rule has often raised the question whether the power to dispose be universal or restrained, in order to determine whether the person invested with it be the owner or only clothed with authority over it. A doubt as to the universality of the power gave rise to the question cited at the bar on the side of the defendant. Wherever in the examination the power has been determined to be a restrained one, then it has not vested the property, but has remained a power still. A limitation over, founded upon such antecedent universal power, is considered to be void, because it cannot be known whether there will be anything for it to operate on. For should the power be executed and all the property disposed of, there would be nothing, and such an uncertainty was not considei'ed as the subject of legal disposition ; especially not by the testator, who, having vested the property and left it unimpaired in the legatee) by any subsequent imperative bequest has, of course, nothing more to give. In the present case there is no question but that some property is given to the widow, either absolute or for life, and that she is not vested with any power over it, except that which is-by the property which she has. Her right of disposal is a quality annexed to the property vested in her, and is expressed to make more precisely certain the meaning of the testator. Her property is not derived through the medium of a power, but by direct investment of the property itself. All cases, therefore, in which the main question was whether property was vested by means of a power, are beside the present question, and may be laid aside as wholly inapplicable to it.
*83 Resort is next had to another set of cases. 1 B. Ch. Rep. 179; 2 B. Ch. Rep. 585; 2 Be. Rep. 43. The principle of these cases is this, if the bequest of an estate be followed by a direction that it shall go over to another, which direction cuts down the absolute estate and vests an interest in the remainder man. But otherwise it is, if the limitation over be not imperative, but only recommendatory; and hence it became so all-important in the cited cases to establish, on the one hand a recommendatory intention, and on the other a positive or imperative one. In the present case there is no question but that the limitation over is imperative and not by way of recommendation to the first legatee, and, therefore, all these cited cases are wholly inoperative upon’the one now under consideration.
There is yet another class of cases brought forward which show that when an estate is vested, the whole of which may be consumed in the use by the first legatee, that a remainder over, founded thereon, is void. This is the point adjudicated, 2 B. Ch. Rep. 588, and in the numerous decisions there cited. To make these cases relevant, it must appear in the present instance, the first taker or legatee had power to dispose of the whole estate at her will and pleasure, and might either execute that power or not, as she thought proper. That, clearly, is not the present case. The first legatee here has no right to dispose of the whole, but only of certain special parts, for particular and special purposes. In one of the cited cases two thousand pounds were given by will to A, and if he died without disposing of the same, then to B. The limitation over to B was held void. It will be sufficient to point out the differences between the present case and the cited one to show that one cannot govern the other. One striking trait of difference is that here the remainder is positive, there it was conditional. Here the property is for life in the legatee, there it is absolute and forever. Here the property vests in the remainder man instanter, there it vests, if at all, not till after the death of the first legatee; there, in the mean time, it goes to the executors of the first legatee, the property remaining in him at the time of his death is liable to his debts, here the property ceases instanter on the death of the first legatee, and is not liable to her debts at all, but goes over to the remainder man unincumbered with her debts. There it is uncertain as long as he lives, whether the first legatee will ever dispose of the whole ; here it is fixed that she cannot dispose of the. whole. There it is equal whether there will or will not be a remainder or residue ; here there must be, if the directions of the will be observed, unless in the event of destruction by the act of God. In one word, the uncertainty, I would rather say the unsubstantiality of the remainder over in the case cited was produced by a circumstance which does not exist in the case before us, namely, the acknowledged right to dispose of the whole by the legatee in his lifetime, which, if exercised, would leave no residue; here there is no such right or power by which such uncertainty can be produced. In the present case *84 there is a certain and. substantial remainder ; in the case cited only an ideal one without substance, which cannot be secured to the supposed owner, and which never could come into existence consistently with the property which is absolutely vested in him, and which, in any subsequent part of the will, is not contradicted or cut down by any imperative direction. Cases so widely different in principle cannot be brought to act upon each other, and if laid out of view in the present instance, as they should be, will leave the clauses in question unopposed and uncontradicted by any rule of law, except that which directs that the will of the testator shall take effect.
I am of opinion, therefore, that the widow of the testator having only a life estate, subject to a remainder over to the son "of the testator, with liberty to dispose of such parts of the estate as are necessary for her liberal maintenance, ought under the circumstances of this case, where a part of the negroes has been already sold, to be secured against a recurrence of the like misapplication.
Judges Peck and Brown, considering that security until a final decree should be made, had been already given pursuant to a former order made in this cause, took time to advise of the opinion they should give, till the next term of this Court.